UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
SHEENA GRICE,                 )
                              )
              Plaintiff,      )
                              )        CIVIL ACTION
         v.                   )        NO. 17-10944-WGY
                              )
VIM HOLDINGS GROUP, LLC, MICHAEL )
D'AMBROSE, HIRSCH MOHINDRA, B )
FINANCIAL, LLC, JOHN BARTLETT, U )
SOLUTIONS GROUP, LLC, THERESA )
D'AMBROSE, GLOBAL SERVICE GROUP, )
LLC, RUTH POUTANEN, KRW ATTORNEYS )
& ASSOCIATES, LLC, and GEORGE )
WAHBEH,                       )
                              )
              Defendants.     )
_____ )
```

YOUNG, D.J.                                    December 8, 2017

## MEMORANDUM OF DECISION

### I.  INTRODUCTION

The plaintiff, Sheena Grice ("Grice"), filed this action against the defendants VIM Holdings Group, LLC ("VIM"), its manager Michael D'Ambrose and its member Hirsch Mohindra ("Mohindra"), B Financial, LLC ("B Financial") and its manager John Bartlett ("Bartlett"), U Solutions Group, LLC ("U Solutions"), its organizer Theresa D'Ambrose and its owner Michael D'Ambrose, Global Service Group, LLC ("Global") and its manager Ruth Poutanen ("Poutanen"), and KRW Attorneys &

Associates, LLC ("KRW")[1] and its member attorney George Wahbeh ("Wahbeh"), asserting violations of the Massachusetts Small Loan Laws ("MSLL"), Massachusetts General Laws chapter 140, sections 96-113 (Count I)(against VIM Holdings, LLC and B Financial, LLC), the Massachusetts Debt Collection Practices Act ("MDCPA"), Massachusetts General Laws chapter 93, section 24 (Count II), the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. sections 1692, et seq. (Count III)(against VIM Holdings Group, B Financial, U Solutions Group, Global Service Group. KRW, and Wahbeh), asserting fraud (Count IV), civil conspiracy to commit fraud (Count V), and violations of the Consumer Protection Act ("CPA"), Massachusetts General Laws chapter 93A, section two (Count VI).  The defendants[2] filed a joint motion to dismiss all counts for lack of personal jurisdiction and moved to compel Grice to submit her claims to the forum selection clause.

---

[1] KRW Attorneys & Associates, LLC was dissolved by the Secretary of State of Illinois on May 13, 2016. Compl. ¶ 123. Thus, Grice is asking that Wahbeh be held individually liable for all torts and fraud committed by KRW.  Id.

[2] Mohindra is not a moving party in this motion to dismiss because Mohindra has not been served.  Notice of Removal at 4, ECF No. 1.  The defendants B Financial and U Solutions are among the defendants who submitted this motion, see Defs.' Joint Mot. Lack of Jurisdiction at 2, but the defendants' memorandum does not address B Financial's and U Solutions' factual situation.

## A.   Procedural History

On or about April 21, 2017, Grice filed this suit against
the defendants in the Massachusetts Superior Court sitting in
the and for the County of Suffolk.  Notice Removal, ECF No. 1.
On May 22, 2017, the defendants removed the suit to the United
States District Court for the District of Massachusetts on
diversity grounds.  Id.  Grice's complaint contains six claims:
(1) a MSLL claim against VIM and B Financial, id. at ¶¶,56-72,
(2) a MDCPA claim against all defendants, id. at ¶¶ 73-86, (3) a
FDCPA claim against VIM, B Financial, U Solutions, Global, KRW
and Wahbeh, id. at ¶¶ 87-110, (4) a claim for fraud against all
defendants, id. at ¶¶ 111-17, (5) a claim for civil conspiracy
to commit fraud against all defendants, id. at ¶¶ 118-23, and
(6) a CPA claim, id. at ¶¶ 124-30.

On October 10, 2017, the Defendants moved to dismiss all
counts for lack of jurisdiction, Joint Mot. Dismiss Lack of
Jurisdiction ("Defs.' Joint Mot. Lack of Jurisdiction"), ECF No.
51; Joint Mem. Supp. Joint Mot. Dismiss Lack of Jurisdiction
("Defs.' Joint Mem. Lack of Jurisdiction"), ECF No. 52, and
moved to dismiss all counts for failure to state a claim or, in
the alternative, to transfer venue.  Joint Mot. Dismiss Failure
to State a Claim, ECF No. 49; Joint Mem. Supp. Joint Mot.
Dismiss Failure to State a Claim ("Defs.' Joint Mem. Failure to
State a Claim"), ECF No. 50.  On October 20, 2017, Grice filed

her opposition to the defendants' joint motions to dismiss. Pl.'s Opp'n Joint Mot. Dismiss Lack of Jurisdiction ("Pl.'s Mem. Opp'n Lack of Jurisdiction"), ECF No. 56; Pl.'s Opp'n Joint Mot. Dismiss Failure to State a Claim ("Pl.'s Mem. Opp'n Failure to State a Claim"), ECF No. 55. The parties appeared before the Court for oral argument on November 9, 2017, Electronic Notice, ECF No. 57.

### B. Factual Allegations

Grice is a single parent and resides in Roslindale, MA. Compl. ¶ 4. She earns less than $15.00 an hour -- her only source of income to support herself and her minor child. Id. at ¶ 49. VIM is a Delaware limited liability company with a principal place of business in Addison, Illinois. Id. at ¶ 5. It operates several payday loan websites, including www.guaranteedcashnow.net ("Website"). Id. Michael D'Ambrose resides in Chicago, Illinois and is the registered principal of VIM. Id. at ¶ 6. Mohindra also resides in Illinois and is a managing member of VIM. Id. at ¶ 7. B Financial is a Delaware limited liability company with a principal place of business in Bloomingdale, Illinois. Id. at ¶ 8. It is a payday lender affiliated with VIM. Id. Bartlett is the registered principal and managing member of B Financial. Id. at ¶ 9. Through the Website, VIM and B Financial conduct business together as Guaranteed Cash Now, a payday lender offering small loans to low

income consumers with poor credit at high rates.  Id. at ¶¶ 29-30.

U Solutions is a Wyoming limited liability company with principal places of business in Addison, Illinois and Wood Dale, Illinois.  Id. at ¶ 10.  U Solutions handles the debt collection for payday loans issued through the Website.  Id.  Theresa D'Ambrose, who resides in Chicago, Illinois, is the registered principal and organizer of U Solutions and is also the wife of Michael D'Ambrose.  Id.  Global is a Delaware limited liability company with a principal place of business in Chicago, Illinois. Id. at ¶ 12.  It was registered with the Secretary of the Commonwealth of Massachusetts as a foreign limited liability company doing business as a "collection company" in Massachusetts.[3]  Pl.'s Mem. Opp'n Lack of Jurisdiction at 10. Global handles the Automatic Clearing House ("ACH") transactions on behalf of VIM and B Financial for loans issued through the Website.  Compl. ¶ 12.  Poutanen, who resides in Wausau, Wisconsin, is the managing member of Global and is also the mother of Theresa D'Ambrose.  Id. at ¶ 13.  In addition, the telephone number of Global is registered to Nascent Holdings, LLC, which is owned by Michael D'Ambrose.  Id. at ¶¶ 26-27.

---

[3] Grice did not mention that Global is registered as a debt collection company in Massachusetts in her complaint.

KRW is an Illinois law firm located in Chicago, Illinois, and is the corporate counsel for Guaranteed Cash Now. Id. at ¶ 14. Wahbeh, who resides in Morton Grove, Illinois, is an attorney licensed to practice in Illinois and is one of the three members of KRW. Id. at ¶ 15.

On July 14, 2015, Grice applied for and received a $200 loan ("Loan") through the Website using her Massachusetts address. Id. at ¶¶ 31, 65. Grice was directed to the Website after B Financial successfully bid on a consumer's loan application. Defs.' Joint Mem. Lack of Jurisdiction Ex. 2 at ¶¶ 7-8. After Grice submitted her loan application through the Website, a loan specialist contacted her regarding her application and then provided her with the login information to the customer section of the Website. Id. at ¶ 4.

Shortly after receiving the loan, Global began withdrawing money from Grice's online account with Citibank, N.A., which was registered with Grice's address in Massachusetts. Compl. at ¶¶ 41, 65. Because such withdrawals continued after Grice believed that she had fully repaid the Loan, at some unspecified time, Grice closed her account with Citibank, N.A., hoping to stop the withdrawals. Id. at ¶ 42.

After she closed the account, Grice received many telephone calls from U Solutions, informing her that she could be arrested and compelled to defend a lawsuit in Chicago, Illinois, if she

did not provide her new account number.  Id. at ¶ 43.  U

Solutions sent emails to Grice's work place, in which U

Solutions threatened to garnish her wages if she did not make

timely payments, id. at ¶ 44, and sent invoices to Grice for

payments which she believed that she did not owe, id. at ¶ 114.

U Solutions also left recorded messages for Grice stating that

her balance would be reset to start over if she missed a

payment.  Id.  On June 14, 2016, Wahbeh drafted and sent a

letter on KRW letterhead to Grice's work email, stating that

Guaranteed Cash Now had a right to garnish Grice's wages without

a court order and would sue her and potentially add "thousands

of dollars in attorney's fees, legal expenses and court costs to

the judgment amount."  Id. at ¶¶ 45, 114; Pl.'s Mem. Opp'n Lack

of Jurisdiction Ex. 1.  The letter was addressed to "Employer of

Sheena Grice" without any specific mailing address.  Pl.'s Mem.

Opp'n Lack of Jurisdiction Ex. 2.  Wahbeh's name appeared at the

bottom of the letter.  Id.

Grice informed U Solutions of her new bank account number

with Account Now after she received the letter from Wahbeh.  Id.

at ¶¶ 46-47.  Between June 21, 2016 and November 18, 2016,

Global had withdrawn at least an additional $982 from Grice's

new bank account.  Id. at ¶ 47.  Grice believes that she has

paid more than $1,600 for the $200 loan.  Id. at ¶ 48.

Grice was not asked to sign any loan documents or contracts and did not receive any agreement with regard to the Loan until U Solutions sent a copy of a loan agreement to Grice upon request on December 22, 2016. Id. at ¶ 32. The "Consumer Line of Credit" agreement ("Agreement") governs the Loan and indicates that B Financial is the lender. Id. at ¶ 33. The Agreement specifies Utah law as the governing body of law and the State of Illinois as the venue for any suits or proceedings arising from or relating in any way to the Agreement. Agreement, Ex. A, ECF No. 1-1 at 2.

The Agreement also includes a list of fees and payment requirements:

(1) a $15.00 annual membership fee, a draw fee of $5.00 every time money was taken out, and interest at 9.99% annually. The billing cycle was two weeks and repayments would be drawn from the borrower's account at the end of every billing cycle. Id. at ¶ 35;

(2) only 3% of each bi-weekly minimum payment would be applied toward the outstanding principal. Id. at ¶ 36;

(3) a transaction fee of $30.00 for every $100.00 of outstanding principal and a billing cycle fee of $2.50 would be assessed at every billing cycle. Id. at ¶ 37;

(4) late fee of $10.00 for any billing cycle (two weeks), in which a payment was not made timely, and a $25.00

penalty for any payment that was dishonored.  Id. at ¶ 38.

On December 31, 2016, U Solutions emailed Grice an invoice indicating that she had a balance of $1,042.44 and an amount of $848.44 would be due on January 13, 2017.  Id. at ¶ 55.  The effective interest rate of her Loan, including all fees, exceeded 800% and totaled more than $1,650.00 a year.  Id. at ¶¶ 39, 40.  As a result of the drafts from her account, Grice fell behind in car payments (the car was repossessed on November 18, 2016), and in her rent.  Id. at ¶¶ 51, 52.  A charitable organization, Interfaith Social Services, paid her outstanding rent of $800.00 to stop eviction proceedings.  Id. at ¶¶ 50-54.

## II.  PERSONAL JURISDICTION

The Defendants claimed that Grice's complaint should be dismissed in its entirety for lack of jurisdiction because none of the Defendants were Massachusetts residents or had sufficient in-forum contacts for this Court to assert personal jurisdiction.  Defs.' Joint Mem. Lack of Jurisdiction at 5-6. This Court denied the motion with respect to Wahbeh, KRW, VIM and Global and granted the motion with respect to Bartlett, Theresa D'Ambrose, Michael D'Ambrose and Poutanen.

### A.  Standard of Review

In ruling on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing under the Federal

Rules of Civil Procedure 12(b)(2), the plaintiff bears the
burden of proving to the Court that such jurisdiction exists,
Griffiths v. Aviva London Assignment Corp., 187 F. Supp. 3d 342,
346 (D. Mass. 2016) (Gorton, J.) (citing Massachusetts Sch. Of
Law v. ABA, 142 F.3d 26, 34 (1st Cir. 1998)), and the district
court must apply the prima facie standard of review, Katz v.
Spiniello Cos., 244 F. Supp. 3d 237, 241 (D. Mass. 2017)
(Casper, J.) (citing United States v. Swiss Am. Bank, Ltd., 274
F.3d 610, 618 (1st Cir. 2001)).  The plaintiff must show that
"jurisdiction is 1) statutorily authorized and 2) consistent
with the Due Process Clause of the United States Constitution."
Provanzano v. Parker View Farm, Inc., 796 F. Supp. 2d 247, 252
(D. Mass. 2011) (Gorton, J.) (citing Astro-Med, Inc. v. Nihon
Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009)).

Specifically, the plaintiff must "go beyond the pleadings
and make affirmative proof."  Id. at 253 (quoting Swiss Am.
Bank. Ltd., 274 F.3d at 619 (internal citation and quotation
marks omitted)).  Conclusory allegations or farfetched
inferences in the pleading will not be sufficient to make a
prima facie showing of personal jurisdiction.  See Ticketmaster-
N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994); Boit v.
Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992).  In
addition, the Court must take all alleged facts as true and
construe them in the light most favorable to the plaintiff.

<u>Griffiths</u>, 187 F. Supp. 3d at 346 (citing <u>Massachusetts Sch. of</u> <u>Law.</u>, 142 F.3d at 34).

Under the Due Process Clause, a defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" <u>Baskin–Robbins Franchising</u> <u>LLC</u> v. <u>Alpenrose Dairy, Inc.</u>, 825 F.3d 28, 35 (1st Cir. 2016) (quoting <u>International Shoe Co.</u> v. <u>Washington</u>, 326 U.S. 310, 316 (1945)). "[A] federal district court may exercise either general or specific jurisdiction over a defendant." <u>Id.</u>; <u>Mueller Sys., LLC</u> v. <u>Robert Teti & Itet Corp.</u>, 199 F. Supp. 3d 270, 278 (D. Mass. 2016) (Gorton, J.).

In Massachusetts, the Court may proceed directly to the Constitutional analysis because the long-arm statute is "coextensive with the limits allowed by the United States Constitution." <u>Hannon</u> v. <u>Beard</u>, 524 F.3d 275, 280 (1st Cir. 2008); <u>see</u> <u>Acushnet Co.</u> v. <u>Zimventures, LLC</u>, 155 F. Supp. 3d 97, 101 (D. Mass. 2015) (noting that "the Court need only analyze the Due Process component"); <u>Provanzano</u>, 796 F. Supp. 2d at 253 ("Massachusetts long-arm statute reaches to the full extent that the Constitution allows" (internal citation omitted)).

## B.  General Jurisdiction

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a

corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). In addition to domicile, a court may also assert general jurisdiction over an individual when the person offers explicit consent, J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880 (2011) (citing Insurance Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982)), or is physically present in the forum state, Burnham v. Superior Court of California, County of Marin, 495 U.S. 604, 619 (1990) ("[J]urisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.'").

A court may exercise general jurisdiction over foreign corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 564 U.S. at 919 (citing International Shoe Co., 326 U.S. at 317). Specifically, the paradigm forum for all-purpose general jurisdiction are a corporation's place of incorporation and principal place of business. Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014) (citing Goodyear, 564 U.S. at 924).

Here, none of the individual defendants are domiciled in Massachusetts and none of the corporate defendants are incorporated or have principal places of business in Massachusetts. Compl. ¶¶ 5-15. In addition, Grice did not make any allegations with regard to whether any individual defendants have consented to the forum or are physically present in the forum. Therefore, this Court concluded that there was no general jurisdiction.

## C. Specific Jurisdiction

A court may exercise personal jurisdiction under the Due Process Clause when "the defendant has maintained certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial injustice." Katz, 244 F. Supp. at 244 (quoting International Shoe Co., 326 U.S. at 316 (internal quotation marks omitted)). The First Circuit adopts a three-part inquiry to determine whether a Court is authorized to assert specific jurisdiction over an out-of-state defendant. EMC Corp. v. Petter, 104 F. Supp. 3d 127, 133 (D. Mass. 2015) (Hillman, J.).

> First, the legal claims must relate to or arise out of the defendant's contacts in the forum. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). Second, the defendant's contacts must constitute "purposeful availment of the benefits and protections" of the forum's laws. Id. Third, the exercise of jurisdiction must be reasonable, in light of the First Circuit's "gestalt factors." Id.

EMC Corp., 104 F. Supp. 3d at 133. A plaintiff must prevail on all three prongs to establish specific jurisdiction. Mukarker v. City of Phila., 178 F. Supp. 3d 8, 10-11 (D. Mass. 2016) (Saris, C.J.) (citing C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014)). A court need not reach the reasonableness inquiry if the plaintiff fails to succeed on the first two prongs. Id. at 11 (citing Sawtelle v. Farrell, 70 F.3d 1381, 1394 (1st Cir. 1995)).

### 1. Specific Jurisdiction over Wahbeh and KRW

#### a. Relatedness

The defendants claimed that this Court ought not assert personal jurisdiction over Wahbeh and KRW because a single contact is insufficient to confer personal jurisdiction. Defs.' Joint Mem. Lack of Jurisdiction at 7. This Court disagreed.

The relatedness inquiry is a "flexible, relaxed standard," which focuses on "whether the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Katz, 244 F. Supp. 3d at 244 (internal citations and quotation marks omitted). It requires a "demonstrable nexus" between the claims and the defendant's in-forum contacts. Mukarker, 178 F. Supp. 3d at 11 (internal citations omitted).

Wahbeh and KRW's only forum-based contact is that Wahbeh drafted the letter on KRW's letterhead, which was later sent to

[14]

Grice's work email.  Compl. ¶ 45.  The letter stated that KRW

was the general counsel to Guaranteed Cash Now, Guaranteed Cash

Now had a right to garnish Grice's wages without a court order,

and would sue her and potentially add "thousands of dollars in

attorney's fees, legal expenses and court costs to the judgment

amount."  Id. at ¶¶ 45, 114; Pl.'s Mem. Opp'n Lack of

Jurisdiction Ex. 1.  Grice's claims against Wahbeh and KRW were

premised on the allegations that they engaged in debt collecting

activities on behalf of VIM and B Financial by making false

representations and threatening to sue her in the letter.

Compl. ¶¶ 79, 103, 113-14, 127.

Wahbeh and KRW argued that the single email addressed

generically to Grice's employer was insufficient to confer

jurisdiction.  Defs.' Joint Mem. Lack of Jurisdiction at 7.

Specifically, they compared this case to the facts of Krambeer

v. Eisenberg, 923 F. Supp. 1170 (D. Minn. 1996), where a

Connecticut attorney sent one debt collection letter to the

plaintiff in Minnesota on behalf of a third party and the

plaintiff alleged a violation of the FDCPA.  Id. at 1172-73.

The District Court of Minnesota ruled that a single debt

collection letter was not sufficient to establish personal

jurisdiction over the nonresident defendant because the very

limited contact with one resident of Minnesota did not

"purposefully avail [him]self of the privilege of conducting

activities within the forum State." Id. at 1175 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Wahbeh and KRW, however, stretched other citations a bit too far. Defs.' Joint Mem. Lack of Jurisdiction at 7 (citing Pandey v. Giri, 457 F. Supp. 2d 94 (D. Mass. 2006) (Ponsor, J.)). In Pandey, Judge Ponsor ruled that a letter sent by a nonresident attorney, not admitted to practice in Massachusetts, to a Massachusetts resident was an insufficient basis for establishing personal jurisdiction over a Massachusetts Rules of Professional Conduct claim because the attorney did not send the letter until after the plaintiff contacted the attorney's client numerous times and the attorney did not solicit or perform any business in Massachusetts. Id. at 101-02. But see Ernst v. Jesse L. Riddle P.C., 964 F. Supp. 213, 217 (M.D. La. 1997) ("Because [the defendant's] alleged involvement with the letter was carried out on behalf of the [law firm], the letter cannot form the basis for specific jurisdiction over [the defendant] personally.").

Grice asserted that committing a tortious act within the Commonwealth, such as a FDCPA violation, constituted a sufficient basis for personal jurisdiction. Pl.'s Mem. Opp'n. Lack of Jurisdiction at 7 (citing Gerstle v. Nat'l Credit Adjusters, L.L.C., 76 F. Supp. 3d 503 (S.D.N.Y. 2015) (single letter sufficient); Chartier v. M. Richard Epps, P.C., No. Civ.

A. ELH-14-1071, 2014 WL 4748629 (D. Md. Sept. 23, 2014) (single communication sufficient)).  In Gerstle, collection letters that contained the typewritten signature of the debt collector's manager were addressed and sent to the borrower in New York.  76 F. Supp. 3d at 508.  The Southern District of New York exercised personal jurisdiction over the manager because she purposefully directed the letters to New York by putting her name as the author on the letters even though the manager claimed that she did not draft them.  Id. at 511.  Gerstle is distinguishable from the case at bar because the manager sent more than one letter to the forum state in Gerstle, whereas KRW and Wahbeh only sent one letter to Grice.  In addition, the letters in Gerstle contained a New York mailing address while the letter here was addressed to Grice' employer without specifying any mailing address.  Chartier, however, mirrors the facts here.  In Chartier, the District of Maryland asserted personal jurisdiction over a nonresident debt collector on the basis of one email that the debt collector sent to the borrower after learning that the borrower resided in Maryland.  2014 WL 4748629, at *10 (stating that a court must focus on the quality of the contacts instead of the quantity).

The short of it is that there is a split on the issue of whether a single communication giving rise to a FDCPA claim is sufficient to establish personal jurisdiction over a nonresident

debt collector or attorney.  Compare Silva v. Jason Head, PLC,
No. 09-CV-05768-LHK, 2010 WL 4593704, at *3 (N.D. Cal. Nov. 4,
2010) (asserting personal jurisdiction over the defendants
because claim arose out of one voice message defendants left on
the plaintiff's answering machine), Maloon v. Schwartz, Zweban &
Slingbaum, L.L.P., 399 F. Supp. 2d 1108, 1112–13 (D. Haw. 2005)
("Defendants performed an affirmative act through their agent—
leaving a message on Plaintiff's answering machine . . . . Even
though Defendants never physically entered the state, their
employee's conduct created a connection with the forum state
such that they should have reasonably anticipated being haled
into a California court."), and Sluys v. Hand, 831 F. Supp. 321,
324 (S.D.N.Y. 1993) ("Where an alleged debtor is located in a
jurisdiction and receives documents from a person purporting to
be a debt collector located elsewhere, and the transmittal of
those documents is claimed to have violated the [FDCPA], suits
may be brought where the debtor . . . receive[s] the
communications[]"), with Eubanks v. Filipovich, No. CIV.A. 12-
4299, 2012 WL 6731123, at *5 (E.D. Pa. Dec. 27, 2012) ("Although
email and telephone contacts may, in conjunction with other
contacts, support the exercise of personal jurisdiction, they
are alone insufficient to satisfy due process[]"), and Hawkins
v. Harston, No. 93-CV-72031, 1994 WL 902366, at *3 (E.D. Mich.
Jan. 31, 1994) ("[A] single letter or phone call can be the type

of 'random' or 'attenuated' contacts that the Supreme Court rejected as being sufficient to find personal jurisdiction.")

Specific jurisdiction focuses on "the relationship between the contacts giving rise to personal jurisdiction and the activities underlying the cause of action." Landmark Bank v. Machera, 736 F. Supp. 375, 379 (D. Mass. 1990). A single contact may be sufficient to establish jurisdiction when it creates a "substantial connection" with the forum state. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 & n.18 (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)); see also Landmark Bank, 736 F. Supp. at 379 (stating that "the necessary level of minimum contacts can be quite low —- indeed, a single contact with the forum can be sufficient, as long as the cause of action arises out of the contact." (internal citations omitted)). Otherwise, one may be able to avoid the liability for sending debt collection letters by invoking the protection of distance. Sluys, 831 F. Supp. at 324.

Accordingly, the relatedness requirement is satisfied.

### b. Purposeful Availment

The defendants argued that Wahbeh and KRW did not purposefully avail themselves of the laws of Massachusetts because the letter sent to Grice's employer did not include any Massachusetts mailing address. Defs.' Joint Mem. Lack of Jurisdiction at 7. This Court disagreed.

"Personal jurisdiction over an out-of-state defendant is proper only if 'the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws.'" Acushnet Co., 155 F. Supp. 3d at 102 (quoting Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1296-97 (Fed. Cir. 2009)). "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Burger King Corp., 471 U.S. at 475 (internal citations omitted). The Court should focus on the "voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5 (1st Cir. 2016) (citing Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007)); Weinberg v. Grand Circle Travel, LCC, 891 F. Supp. 2d 228, 245 (D. Mass. 2012). "The focus of [purposeful availment] analysis is on whether a defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.'" Weinberg, 891 F. Supp. 2d at 245-46 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)).

Wahbeh and KRW pointed out that they did not purposefully cause the letter to be directed to Massachusetts because Grice did not allege that they had knowledge of Grice or her employer's address. Defs.' Joint Mem. Lack of Jurisdiction at 6-7. Moreover, the letter was written generically to Grice's employer without specifying any Massachusetts address. Id. at 7. Grice countered by explaining that because the letter stated that Wahbeh had reviewed the facts of the case before drafting it, Pl.'s Mem. Opp'n Lack of Jurisdiction Ex. 1, it is difficult to believe that Wahbeh and KRW were not aware that Grice and her employer were located in Massachusetts, Pl.'s Mem. Opp'n Lack of Jurisdiction at 6-7. During the oral argument, the Defendants responded that Wahbeh only reviewed facts with respect to the debt itself, rather than jurisdictional facts. Hence, Wahbeh did not know that Grice or her employer was located in Massachusetts.

When a defendant challenges the sufficiency of the plaintiff's allegations of facts, the Court must "draw all reasonable inferences from [the plaintiff's well-pleaded factual allegations] in her favor." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). Here, given that Wahbeh reviewed the case before drafting the letter, Pl.'s Mem. Opp'n Lack of Jurisdiction Ex. 1, and that Grice provided the Website with her Massachusetts address when applying for the Loan, Compl. ¶ 65,

it is reasonable to infer that Wahbeh and KRW were aware that
Grice was a Massachusetts resident. By affirmatively drafting
the letter and claiming to be the counsel of Guaranteed Cash
Now, Compl. ¶ 114, Wahbeh and KRW ought have foreseen potential
liability in the Commonwealth. See Silva, 2010 WL 4593704, at
*3 (defendants presumably knew that leaving a message on the
plaintiff's answering machine would allow them to collect debt
and subject them to liability in the forum state). In addition,
"[w]hen the actual content of communications with a forum gives
rise to intentional tort causes of action, this alone
constitutes purposeful availment." Kim v. Veglas, 607 F. Supp.
2d 286, 295 (D. Mass. 2009) (quoting Wien Air Alaska, Inc. v.
Brandt, 195 F.3d 208, 213 (5th Cir. 1999) (internal quotation
marks omitted)).

Accordingly, the Court concluded that Wahbeh and KRW
purposefully availed themselves of Massachusetts law.

### c.  Reasonableness

The Gestalt Factors that govern the reasonableness inquiry
are "(1) the defendant's burden of appearing; (2) the forum
state's interest in adjudicating the dispute; (3) the
plaintiff's interest in obtaining convenient and effective
relief; (4) the judicial system's interest in obtaining the most
effective resolution of the controversy; and (5) the common
interests of all sovereigns in promoting substantive social

policies." <u>Mullaly</u> v. <u>Sunrise Senior Living Mgmt., Inc.</u>, 224 F. Supp. 3d 117, 126 (D. Mass. 2016) (Dein, M.J.) (citing <u>Sawtelle</u> v. <u>Farrell</u>, 70 F.3d 1381, 1394 (1st Cir. 1995)).

It is "presumptively not unreasonable" for a Court to assert personal jurisdiction over a defendant once it has been established that the claim arises out of the forum-based conduct and the defendant purposefully availed itself of the laws of the forum state. <u>Burger King Corp.</u>, 471 U.S. at 476. The defendant bears the burden of proof to show unfairness. <u>Id.</u> at 477 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable"). Specifically, a party will only win on the first Gestalt Factor when the party can show "some kind of special or unusual burden." <u>Griffiths</u> v. <u>Aviva London Assignment Corp.</u>, 187 F. Supp. 3d 342, 349 (D. Mass. 2016) (Gorton, J.) (citing <u>Pritzker</u> v. <u>Yari</u>, 42 F.3d 53, 64 (1994)). In addition, Massachusetts certainly has an interest in a suit involving a Massachusetts resident, satisfying the second factor. <u>See</u> <u>id.</u> Next, as stated by the First Circuit, courts should afford a plaintiff's choice of forum some deference. <u>Id.</u> (citing <u>Ticketmaster-N.Y.</u>, 26 F.3d at 211). The Court must also consider any relevant public policy, generally, "the ability of a state to provide a

convenient forum for its residents to redress injuries inflicted by out-of-forum actors." Id. (citing Sawtelle, 70 F.3d at 1395).

Here, KRW and Wahbeh did not advance any argument as to why it would be unconstitutionally unfair to compel them to litigate in Massachusetts. Thus, this Court concluded that exercising personal jurisdiction over KRW and Wahbeh was consistent with the fairness requirement of the Due Process Clause.

Accordingly, this Court denied the defendants' motion to dismiss with respect to KRW and Wahbeh.

### 2. Specific Jurisdiction over VIM

VIM argued that this Court ought not assert personal jurisdiction over it because it "had no involvement in the origination, servicing, or any other activity related to Plaintiff's loan." Defs.' Joint Mem. Lack of Jurisdiction at 8. Given the sufficient factual allegations from Grice, this Court concluded otherwise.

### a. Relatedness

Grice's claims against VIM were premised on the allegations that VIM originated the Loan through the Website, owned and operated the Website that contained false statements with respect to the Loan and initiated contact with Grice by

telephone to help her complete the loan application.[4]  Pl.'s Mem.
Opp'n Lack of Jurisdiction at 9.  VIM argued that it is not
subject to jurisdiction in Massachusetts because it "had no
involvement in the origination, servicing, or any other activity
related to Plaintiff's loan."  Defs.' Joint Mem. Lack of
Jurisdiction at 8.  Grice pointed out, however, that VIM indeed
owned and operated the Website from which she applied for and
received the Loan.  Pl.'s Mem. Opp'n Lack of Jurisdiction at 8.
Specifically, it was alleged that the Website changed the
contents under its Privacy Policy Tab from "[t]hese records are
strictly for internal use by VIM Holdings Group" to "[t]hese
records are strictly for internal use by B Financial."  Pl.'s
Mem. Opp'n Lack of Jurisdiction Ex. 2 & 3. This change was made
some time after Grice filed her complaint.  Id. at 8.  It is
thus reasonable to infer that VIM did own and run the Website
when Grice applied for the loan.

Because the Loan was issued to a Massachusetts bank
account, the Website was available in Massachusetts, and Grice's
alleged harm occurred in Massachusetts as a result of the Loan,
the relatedness prong is satisfied.  See Media3 Techs., LLC v.

---

[4] Grice's complaint does not contain any allegation that VIM
initiated contact with her to guide her through the loan
application process.  The defendants admit in Defs.' Joint Mem.
Lack of Jurisdiction Ex. 2 that Grice was contacted by a loan
specialist who helped her complete the loan application process
on the Website.

CableSouth Media III, LLC, 17 F. Supp. 3d 107, 111 (D. Mass. 2014) (Saylor, J.) ("Where, as here, the alleged trademark infringement arose out of the publication of a website in Massachusetts and allegedly caused harm to plaintiff in Massachusetts, the relatedness element is easily satisfied"(internal citations omitted)); Back Bay Farm, LLC. v. Collucio, 230 F. Supp. 2d 176, 186-87 (D. Mass. 2002) (Neiman, M.J.) (relatedness requirement satisfied where suit arose from the sale of horses destined for Massachusetts and the seller's post-transaction contact with the buyer in Massachusetts).

### b.    Purposeful Availment

In cases that involve an interactive website, located outside the forum state and directed at residents of every state, something more is required for a Court to assert personal jurisdiction based on the website activity and the Court should "focus[] on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website." Media3 Techs., LLC, 17 F. Supp. 3d at 112 (citing Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 35 (1st Cir. 2010)). This reflects the concern that "without some limiting principle with regard to purposeful availment, the simple fact that virtually every business now has a website would eviscerate the limits on personal jurisdiction over out-of-state defendants." Id. (citing Cossaboon, 600 F.3d

at 35); see McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir.

2005). "Courts in New York use a 'spectrum of interactivity'

test to determine whether the operation of a website constitutes

the transaction of business in New York." Consumer Fin. Prot.

Bureau v. NDG Fin. Corp., No. 15-CV-5211 (CM), 2016 WL 7188792,

at *7 (S.D.N.Y. Dec. 2, 2016) (citing McCrann v. RIU Hotels

S.A., No. 09 Civ. 9188, 2010 WL 5094396, at *5 (S.D.N.Y. Dec. 6,

2010)). Specifically, websites that "[allow] customers to apply

for, accept, and manage their loans online" and to "establish

accounts . . . with unique usernames and passwords" are highly

interactive and qualify as business transactions for the purpose

of personal jurisdiction analysis. Id. (citing Citigroup Inc.

v. City Holding Co., 97 F. Supp. 2d 549, 565, n.8 (S.D.N.Y.

2000)).

According to the defendants, Grice was directed to the

Website after B Financial successfully bid on her loan

application. Defs.' Mem. Lack of Jurisdiction Ex. 2 at ¶¶ 7-8.

After Grice submitted her loan application on the Website, a

loan specialist contacted her regarding her application and

provided her with the login information to the customer section

of the Website. Id. at ¶ 9. The Website is thus sufficiently

interactive to establish a business transaction with the

Commonwealth. See Consumer Fin. Prot. Bureau, 2016 WL 7188792,

at *7. In addition, since Grice has sufficiently alleged that

VIM is the owner of the Website, see Pl.'s Mem. Opp'n Lack of Jurisdiction Ex. 2 & 3, it is reasonable to infer that the loan specialist contacted Grice on behalf of VIM, even though the defendants claimed that the loan specialist contacted Grice on behalf of B Financial. Defs.' Joint Mem. Lack of Jurisdiction Ex. 2 at ¶ 9. Hence, issuing the Loan to Grice, a Massachusetts resident, and allegedly making false statements on the Website were no longer VIM's only forum-based conduct. Although the Website did not mention its services in Massachusetts specifically, because VIM voluntarily bid for a relationship with Grice through the Website and initiated the contact with her regarding the Loan, VIM purposefully availed itself of the laws of this forum. See Back Bay Farm, LLC., 230 F. Supp. 2d at 187 (the defendant purposefully availed herself to the forum because she voluntarily entered into a relationship with the plaintiff, initiated contact with the plaintiff regarding the transaction at issue, and engaged in post-transaction contact with the plaintiff in the Commonwealth).

### c. Reasonableness

As discussed earlier, supra § II.C.1.c., the defendants have the burden of proof to show unfairness. Here, VIM did not provide any argument as to why it would be unreasonable for this Court to assert personal jurisdiction over it. Thus, exercising personal jurisdiction is presumed to be reasonable.

Therefore, this Court denied the defendants' motion to dismiss with regard to the claims against VIM for lack of personal jurisdiction.

### 3. Specific Jurisdiction over Global

Global argued that the routine banking activity necessary to make automatic withdrawals from Grice's accounts was not a sufficient basis for personal jurisdiction. Defs.' Joint Mem. Lack of Jurisdiction at 8-9. This Court disagreed because Global was also a registered debt collection company in Massachusetts. Pl.'s Mem. Opp'n Lack of Jurisdiction at 10.

#### a. Relatedness

Global withdrew funds from Grice's Massachusetts bank accounts to repay the Loan originated by VIM and B Financial, Compl. ¶¶ 41, 47, 77, while operating as a registered debt collection company in Massachusetts, Pl.'s Mem. Opp'n Lack of Jurisdiction at 10. Grice met the relatedness element because her claims arose out of the withdrawals from her account.

#### b. Purposeful Availment

Global argued that the automatic withdrawal of Grice's bank account was a routine banking activity and was insufficient to confer jurisdiction by itself. Defs.' Joint Mem. Lack of Jurisdiction at 9 (citing Randall D. Jones D.D.S., P.A. v. E-Z Pay Servs., Inc., No. Civ. 06-6043, 2006 WL 2927479, at *2 (W.D. Ark. Oct. 12, 2006) ("[T]o the extent that [the defendant] is

merely debiting bank accounts of Arkansas residents, the Court finds such activity does not confer personal jurisdiction over [it]")). Similarly, in Fitzgerald v. Zakheim & LaVrar, P.A., 90 F. Supp. 3d 867 (D. Minn. 2015), a Minnesota resident brought an FDCPA action against a Florida law firm, alleging that the firm mistakenly initiated garnishment of his bank account. Id. at 869-70. The court held that mere speculation as to the defendant's improper garnishments of bank accounts in Minnesota was insufficient to establish personal jurisdiction. Id. at 873.

Here, unlike Randall and Fitzgerald, Global is registered as a debt collection company in Massachusetts in addition to debiting Grice's Massachusetts bank accounts from July 14, 2015 to November 18, 2016. Pl.'s Mem. Opp'n Lack of Jurisdiction at 10; Compl. ¶¶ 31, 41, 47. Although registering to do business is usually relevant to the general jurisdiction analysis, it is worth noting here because it is directly related to the FDCPA and MDCPA claims and the registration showed that Global had purposefully availed itself to the forum. See Fiske v. Sandvik Mining, 540 F. Supp. 2d 250, 256 (D. Mass. 2008) (Saylor, J.) (registering to do business alone is not sufficient to establish general jurisdiction, but it "add[s] some modest weight to the jurisdictional analysis." (citing Sandstrom v. ChemLawn Corp., 904 F.2d 83, 89 (1st Cir. 1990))). After looking at Global's

in-forum contacts –– registration as a debt collection company and debiting Grice' bank accounts for over a year –– in aggregation, this Court concluded there was a sufficient basis for specific jurisdiction over Global.

### c. Reasonableness

As described earlier, <u>supra</u> § II.C.1.c., the defendants have the burden of proof to show unfairness.  Here, Global did not address any of the Gestalt Factors.  Thus, exercising personal jurisdiction over Global is presumed to be reasonable and fair.

Accordingly, this Court denied the defendants' motion to dismiss with regard to the claims against Global.

### 4. Specific Jurisdiction over Michael D'Ambrose, Bartlett, Theresa D'Ambrose and Poutanen

Michael D'Ambrose, Bartlett, Theresa D'Ambrose and Poutanen ("Individual Defendants") claimed that they were not subject to personal jurisdiction in this Court because Grice failed to allege any of their individual in-forum contacts or participation in the alleged company wrongdoing directed to the forum.  Defs.' Joint Mem. Lack of Jurisdiction at 9.  This Court agreed.

"It is well established that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation." <u>Confederate Motors, Inc.</u> v.

Terny, 831 F. Supp. 2d 405, 411 (D. Mass. 2011) (Dein, M.J.)

(quoting LaVallee v. Parrot-Ice Drink Prods. of America, Inc.,

193 F. Supp. 2d 296, 300 (D. Mass. 2002) (Gordon, J.)).  On the

other hand, "status as [an] employee [] does not somehow

insulate [that individual] from jurisdiction."  Rissman

Hendricks & Oliverio, LLP v. MIV Therapeutics Inc., 901 F. Supp.

2d 255, 263 (D. Mass. 2012) (Wolf, J.) (quoting Calder v. Jones,

465 U.S. 783, 790 (1984)).  "The question of personal

jurisdiction over an individual, therefore, rests on whether

there is an independent basis for jurisdiction based on an

individual's actions . . . ."  Id. (internal citations omitted).

> If personal jurisdiction exists over the . . .
> individual defendants, it presumably must be based on
> one of three theories: (1) that jurisdiction may be based
> on their activities as corporate officers, acting on
> behalf of the corporation, (2) that jurisdiction may be
> based on their activities by disregarding the corporate
> form, or (3) that jurisdiction may be based on their
> activities operating independently of the corporation
> (e.g., by personally guaranteeing its obligations).

M-R Logistics, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269,

279, n.8 (D. Mass. 2008) (Saylor, J.) (stating that this

principle applies the same to limited liability companies and

their members).

### a.  Jurisdiction Based on Activities as Corporate Officers

First, Massachusetts courts have required "more than mere

participation in the corporation's affairs" in order to assert

personal jurisdiction over employees for acting in their official capacity.  Id. at 280 (internal citations omitted); see Interface Grp.-Massachusetts, LLC v. Rosen, 256 F. Supp. 2d 103, 105 (D. Mass. 2003) (Harrington, J.) (noting that Court "must determine whether there is independent basis for personal jurisdiction over [a corporate officer] as an individual"(emphasize in original)).  Specifically, it is necessary to ask "whether an officer or employee derived personal benefit from their contacts in Massachusetts and/or acted beyond the scope of their employment." M-R Logistics, LLC, 537 F. Supp. 2d at 280 (citing LaVallee, 193 F. Supp. at 302).  Massachusetts courts have asserted personal jurisdiction over corporate officers "when the conduct giving rise to the litigation is entrepreneurial or managerial in nature." Hongyu Luo v. Tao Ceramics Corp., No. 13-CV-5280-F, 2014 WL 3048679, at *1 (Mass. Super. Ct. Apr. 10, 2014)(Curran, J.)(citing Kleinerman v. Morse, 26 Mass. App. Ct. 819, 824 (1989)).  The Court must analyze the jurisdictional issue based on the officer's personal contacts with Massachusetts. Rissman Hendricks & Oliverio, LLP, 901 F. Supp. 2d at 264 (emphasis added).

Grice argued that an agency relationship was not necessary for this Court to exercise personal jurisdiction because "[a] defendant's contacts with a particular forum may be imputed

to another defendant for purposes of establishing specific personal jurisdiction where a sufficient relationship exists between the two defendants." Pl.'s Mem. Opp'n Lack of Jurisdiction at 15 (citing <u>Winne</u> v. <u>Nat'l Collegiate Student Loan Tr. 2005-1</u>, 228 F. Supp. 3d 141, 150 (D. Me. 2017)). In <u>Winne</u>, the Court explained what constituted a "sufficient relationship" with several examples. <u>See e.g.</u> <u>Daynard</u> v. <u>Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 55 (1st Cir. 2002) ("Whether or not an agent is initially authorized to act on behalf of a principal, the agent's actions may be attributed to the principal, for purposes of personal jurisdiction, if the principal later ratifies the agent's conduct."); <u>Jet Wine & Spirits, Inc.</u> v. <u>Bacardi & Co.</u>, 298 F.3d 1, 10 (1st Cir. 2002) (attributing contacts of subsidiary to parent corporation where plaintiff supported allegation of agency relationship with disputed record evidence); <u>New England College</u> v. <u>Drew Univ.</u>, No. 08-CV-424-JL, 2009 WL 3525596, at *4 (D.N.H. Oct. 23, 2009) (attributing contacts in light of evidence that one defendant "authorized or at least ratified" second defendant's actions). Here, Grice did not make any allegations as to whether any Individual Defendant approved, supported or controlled any of the in-forum activities by the companies. Therefore, there was no "sufficient relationship" between the Individual Defendants and the company defendants.

In addition, rather than alleging specific forum-based contact of the Individual Defendants, Grice focused her argument on the companies' in-forum contacts without explaining each Individual Defendant's role in these activities. Pl.'s Mem. Opp'n Lack of Jurisdiction at 17-18. Grice failed to provide any factual allegations with regard to the Individual Defendants' specific in-forum conduct. Instead, all of Grice's statements regarding Individual Defendants were conclusory. First, Grice stated that as the managing member of Global, Poutanen "is personally liable for the torts she committed in the course of her management of Global Solutions Group" without any supporting factual allegations. Pl.'s Mem. Opp'n Lack of Jurisdiction at 11. Second, Grice claimed that there existed a sufficient basis for personal jurisdiction over Bartlett because he "knew that his company, B Financial, LLC was reaching customers in Massachusetts . . . and B Financial as a regular business practice contacted customers multiple times to complete loan transactions . . . he clearly intended to make illegal loans to consumers in Massachusetts . . . ." Id. at 12-13. With respect to Theresa D'Ambrose, Grice argued that this Court should exercise personal jurisdiction because "[she] is the Organizer of U Solutions Group, LLC . . . [and thus she] is personally liable for the torts committed against Grice by U Solutions Group, LLC." Id. at 13. Lastly, Grice asserted that

"[t]here can be no doubt that there is a clear basis for this Court to exercise specific personal jurisdiction against Michael D'Ambrose . . . [because he] is the managing member of VIM Holdings, LLC, the owner and operator of the Guaranteed Cash Now website . . . the "Owner" of U Solutions Group, LLC . . . [and] has personal knowledge of the business practices of B Financial . . . ." Id at 13-14.

The plaintiffs "must sufficiently detail [each] defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question" -- "conclusory allegations that the defendant controls the corporation" are not sufficient. Gerstle v. Nat'l Credit Adjusters, LLC, 76 F. Supp. 3d 503, 510 (S.D.N.Y. 2015) (quoting Karabu Corp. v. Gitner, 16 F. Supp. 2d 319, 324 (S.D.N.Y. 1998)); see Art Tech. Grp., Inc. v. Puritan's Pride, Inc., 716 F. Supp. 2d 93, 98 (D. Mass. 2010) (stating that on a motion to dismiss for lack of jurisdiction, "the court will not 'credit conclusory allegations or draw farfetched inferences.'" (quoting Ticketmaster-N.Y., Inc., 26 F. 3d at 203)). Because Grice failed to make sufficient factual allegations to show any personal in-forum contacts of the Individual Defendants, this Court could not find personal jurisdiction on the basis of the Individual Defendants' activities as company owners or managers.

### b. Jurisdiction Based on Activities Disregarding Corporate Form

Second, Court may disregard the corporate form when the officer "was the alter ego of the corporation or . . . had an identity of interest with the corporation itself (i.e., the corporation and the corporation's president)." M-R Logistics, LLC, 537 F. Supp. 2d at 280 (citing LaVallee, 193 F. Supp. 2d at 301). Exercising personal jurisdiction on the basis of the alter ego doctrine is compatible with the due process requirement "because the two corporations (or the corporation and its individual alter ego) are the same entity . . . ." Harrelson v. Seung Heun Lee, 798 F. Supp. 2d 310, 315 (D. Mass. 2011) (Stearns, J.) (quoting Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 653 (5th Cir. 2002)). Here, Grice failed to allege sufficient facts to support a finding of personal jurisdiction on this ground.

Grice argued that the Massachusetts "alter ego" doctrine allow corporate disregard, "even absent a finding of fraud, if 'there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner in which the various corporations and their respective representatives are acting.'" Pl.'s Mem. Opp'n Lack of Jurisdiction at 15-16 (citing United

Elec., Radio & Mach. Workers of America v. 163 Pleasant St.
Corp., 960 F.2d 1080, 1095 (1st Cir. 1992)).  Specifically, when
a parent and its subsidiary fail "to make clear which
corporation is taking action in a particular situation," or
neglect to honor "the formal barriers between the corporations
with a proper segregation of their separate businesses, records,
and finances," their separate entities may occasionally be
disregarded "in order to prevent gross inequity."  United Elec.,
Radio & Mach. Workers of America, 960 F.2d at 1095 (citing My
Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 620
(1968)).

        The alter ego doctrine, however, is not sufficient to
provide a basis for personal jurisdiction over the Individual
Defendants.  Although Grice alleged that VIM, B Financial, U
Solutions Group and Global share common and related owners,
common addresses and common telephone numbers, Compl. ¶ 28, she
failed to provide additional factual allegations as to which of
the Individual Defendants had personally participated in the in-
forum activities.  See In re Cameron Constr. & Roofing Co.,
Inc., 565 B.R. 1, 7 (Bankr. D. Mass. 2016) (Feeney, J.)
("Although common ownership of the stock of two or more
corporations together with common management, standing alone,
will not give rise to liability on the part of one corporation
for the acts of another corporation or its employees, additional

facts may be such as to permit the conclusion that an agency or similar relationship exists between the entities." (internal citations omitted)).  Assuming that Grice had sufficiently alleged intermingling activities among the company defendants, it would only subject all company defendants to personal jurisdiction.  Since Grice failed to allege whether the Individual Defendants have personally intervened or exercised control over the other companies' business, the jurisdictional contacts of the companies may not be imputed to their officers.  See id. (stating that individuals may be liable for the acts of companies "when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship").

As Grice failed to provide any allegations as to each Individual Defendant's personal involvement in the companies' in-forum contacts, the alter ego doctrine did not establish a basis for personal jurisdiction.

### c. Jurisdiction Based on Activities Independent of Corporation

Lastly, personal activities and obligations beyond their roles as corporate officers may be sufficient to establish an individual basis for personal jurisdiction.  M-R Logistics, LLC,

537 F. Supp. 2d at 280.  Grice could not establish jurisdiction over the Individual Defendants on this ground.

As discussed above, because Grice did not allege any specific personal contact of any of the Individual Defendants, there was no evidence that the Individual Defendants acted beyond their roles as company owners or managers.

Accordingly, this Court granted the motion to dismiss with regard to claims against the Individual Defendants.

### III. TRANSFER OF VENUE

The defendants moved to compel Grice to submit her claims pursuant to the forum selection clause.  Defs.' Joint Mem. Failure to State a Claim at 4-11.  The relationship between the parties is governed by a forum selection clause which compels any suit and proceeding to be held in the County of Dupage and State of Illinois.  Agreement at 2.  This Court, however, denied the motion to transfer on the grounds that the clause enforcement is unreasonable and unjust; would render the proceedings gravely difficult for Grice and inconvenient to the point of practical impossibility; and contravenes a strong public policy of Massachusetts, the forum in which suit is brought.

### A.    Standard of Review

The First Circuit treats "a motion to dismiss based on a forum selection clause as a motion alleging the failure to state

a claim for which relief can be granted under Rule 12(b)(6)." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009).

"Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." Id. at 17. "[M]andatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." Id. (citing 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998)).

In this case, the Agreement contained a forum selection clause, which stated that "any suit or proceeding arising from or relating in any way to this Agreement shall be brought only in a federal or state court located in the County of Dupage and State of Illinois; and you consent to the exclusive jurisdiction and venue of such courts." The word "shall" evidenced the mandatory character of the forum selection clause. Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 (1st. Cir. 2014).

The burden of proof is on the party opposing the enforcement of the forum selection clause. Id. at 48 (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17 (1972)).

**B. Grounds for Finding a Forum Selection Clause Unreasonable**

"This Court reviews the enforceability of forum selection clauses employing the <u>Bremen</u> factors." <u>Carter's of New Bedford, Inc.</u> v. <u>Nike, Inc.</u>, 790 F.3d 289, 292 (1st Cir.2015) (citing <u>Huffington</u> v. <u>T.C. Group., LLC</u>, 637 F.3d 18, 23 (1st Cir.2011)). Under <u>Bremen</u>, Court enforces the forum selection clause "absent a strong showing that it should be set aside." <u>Bremen</u>, 407 U.S. at 15. A strong showing of unenforceability exists where

> (1) the clause is the product of fraud or overreaching; (2) enforcement is unreasonable and unjust; (3) its enforcement would render the proceedings gravely difficult and inconvenient to the point of practical impossibility; or (4) enforcement contravenes "a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." <u>Huffington</u>, 637 F.3d at 23.

<u>Carter's of New Bedford, Inc.</u>, 790 F.3d at 292. This Court addressed the issue of whether any of the above grounds were present in this case, and caused the forum selection clause to be unreasonable and thus void.

**1. Enforcement would be unreasonable and unjust.**

A valid forum selection clause may be disregarded on the grounds of unreasonableness or impossibility. "It may be unreasonable to enforce a forum selection clause if

(1) a party was coerced into signing it,

(2) the party was in an inferior bargaining position when
it was negotiated, or

(3) enforcing the clause would make it practically
impossible for that party to litigate its claims."

Provanzano v. Parker View Farm Inc., 827 F. Supp. 2d 53, 60 (D.
Mass. 2011) (Gorton, J.).

The defendants did not coerce Grice into signing the
Agreement.  It was Grice herself who, on July 14, 2015, applied
for and received the Loan.  Compl. ¶ 31.

The second prong looks at the uneven bargaining positions
of the parties.  "But the mere fact of this inequality is not
enough to render an agreement unenforceable."  Rivera, 575 F.3d
at 21.  The Agreement is a typical contract of adhesion.  For
this reason, "the fact that a contract was in boilerplate form
will not, by itself, render it unfair or invalid."  Outek
Caribbean Distributors, Inc. v. Echo, Inc., 206 F. Supp. 2d 263,
267 (D.P.R. 2002).  The Supreme Court has noted that a forum
selection clause in a non-negotiated form contract is valid, so
long as it is not fundamentally unfair.  See Carnival Cruise
Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991).  "There must be
some evidence that the party has exploited this bargaining power
in a way that the courts will not tolerate".  Rivera, 575 F.3d

at 21 (citing Outek Caribbean Distributors, Inc., 206 F. Supp. 2d at 267).

Grice claimed that the Agreement was not available and freely negotiated and therefore she should not be subject to it. Pl.'s Mem. Opp'n Failure to State a Claim at 3. It would be entirely unreasonable to assume that a borrower would or could negotiate the terms of a forum clause in a routine loan agreement. See Carnival Cruise Lines, 499 U.S. at 593. This argument was rejected.

Lastly, it may be unreasonable to enforce the clause when enforcing the clause would make it practically impossible for that party to litigate its claims. Provanzano, 827 F. Supp. 2d at 60.

In Noel v. Walt Disney Parks and Resorts U.S., Inc., No. 10-40071-FDS, 2011 WL 1326667, at *8 (D. Mass. 2011) (Saylor, J.), Massachusetts residents argued that were the case to be transferred to Florida, "the plaintiffs would have to retain new counsel and travel to and from Florida for litigation related matters, which would be grossly unjust." The court in Noel knew that the plaintiffs would be burdened by litigating in Florida. Nevertheless, "it does not rise to the level of inconvenience required under the law that would permit the Court to disregard the forum-selection clause." Id. Considering Grice's financial situation, however, this Court concluded that litigating the

[44]

case in Illinois would raise the level of inconvenience to the level of gross injustice.

> **2. Proceedings will be so gravely difficult and inconvenient that the party challenging the clause will for all practical purposes be deprived of her day in court.**

This condition, similar to the third prong analyzed in the previous section, required the situation when proceeding will be so gravely difficult and inconvenient that Grice would for all practical purposes be deprived of her day in court.

In <u>Kirby</u> v. <u>Miami System Corp.</u>, 1999 Mass. App. Div. 197, 201 (1999), the court reasoned that a forum selection clause calling for litigation in Ohio was unenforceable with respect to modest statutory wage and benefit claims, where the employment contract was essentially contract of adhesion, and economic hardship and geographical inconvenience essentially would have deprived the employee of her day in court.

Grice is a single parent who earns less than $15.00 an hour to support her child. Compl. ¶ 49. The Agreement's forum selection clause would strip Grice of any meaningful opportunity to redress her legal claims against the defendants.

### 3. Enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.

Enforcement of a forum selection clause which would contravene a strong public policy of the Commonwealth of Massachusetts causes the clause to become unreasonable.

"[A] resisting party must show that enforcing the forum selection clause violates public policy, and a showing that the underlying contract would contravene a forum's public policy will not suffice to avoid the clause's operation." Knopick v. UBS AG, 137 F. Supp. 3d 728, 735 (M.D. Pa., 2015) (internal emphasis omitted). The Commonwealth of Massachusetts enacted the laws designed to protect consumers that are here sought to be enforced, including a requirement that all small loan lenders be licensed in Massachusetts, Massachusetts General Laws chapter 140, section 96, prior to offering loans to Massachusetts consumers. None of the defendants were or ever had been licensed to offer small loans in the Commonwealth. Pl.'s Mem. Opp'n. Failure to State a Claim at 6. Moreover, Massachusetts General Laws chapter 140, section 96, sets the upper limit of the amount paid for interest and expenses. It shall not exceed, in the aggregate, an amount equivalent to 12% per annum. Id. Here, however, Grice was asked to repay at an alleged rate of 825%.

Accordingly, the arguments presented met the requirement of unreasonableness.  Enforcement of the forum selection clause here would contravene a strong public policy of the Commonwealth of Massachusetts.

### C.    Venue Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The Court "must evaluate both the convenience of the parties and various public-interest considerations."  Atlantic Marine Const. Co., Inc. v. U.S., Dist. Ct. for the Western Dist. of Tex., 134 S. Ct. 568, 580 (2013).  Transferring this case to Illinois would, as a practical matter, deprive Grice of her day in court, imposes unnecessary hardship on her, and would not promote "the interest of justice".  See id. at 581.

### IV.  CONCLUSION

For the foregoing reasons the Court:

GRANTED IN PART AND DENIED IN PART the defendants' motion to dismiss Grice's claims for lack of jurisdiction, ECF No. 51. Specifically, this Court GRANTED the defendants' motion to dismiss, without prejudice, the claims against Michael D'Ambrose, Bartlett, Theresa D'Ambrose and Poutanen.  This Court

DENIED the defendants' motion to dismiss with respect to the claims against Wahbeh, KRW, VIM and Global.

Likewise, the Court DENIED the defendants' motion to dismiss for failure to state a claim or, in the alternative, to transfer venue, ECF No. 49.

By the Court,

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE